

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-against-<br><br>2 GOLD L.L.C., TF CORNERSTONE INC.,<br>TF CORNERSTONE PROPERTIES LLC,<br>AVINASH K. MALHOTRA ARCHITECTS,<br>and AVINASH K. MALHOTRA,<br><br>Defendants. | ECF CASE<br><br>**CONSENT DECREE**<br><br>13 Civ. 2679 (RPP) |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/3/4/13

## INTRODUCTION

**A.    Background**

This Consent Decree is entered into between the United States of America (the "United States") and Defendants 2 Gold L.L.C., TF Cornerstone Inc., and TF Cornerstone Properties LLC (collectively, the "Developer Defendants").

WHEREAS, the United States brought this action (the "Action") to enforce provisions of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601–3619.  Specifically, the United States' complaint in this Action, filed on April 23, 2013, alleges that the Defendants have engaged in a pattern or practice of discrimination, and have denied rights to a group of persons in a manner raising an issue of general public importance, including by failing to design and/or construct 2 Gold Street, a residential apartment complex in New York, New York ("2 Gold Street"), with the features of accessible and adaptive design and construction required by the FHA, 42 U.S.C. § 3604(f)(3)(C);

WHEREAS, 2 Gold Street is subject to the accessible design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(c);

**B.     Developer Defendants**

WHEREAS, 2 Gold L.L.C., a New York limited liability company, TF Cornerstone Inc., a New York business corporation, and/or TF Cornerstone Properties LLC, a New York limited liability company own, built, and/or developed 2 Gold Street, and as owners, builders, and/or developers, designed and constructed 2 Gold Street;

WHEREAS, this Consent Decree does not resolve the United States' claims against Avinash K. Malhotra Architects and Avinash K. Malhotra (collectively the "Architect Defendants");

**C.     Relevant Requirements of the Fair Housing Act**

WHEREAS, the FHA provides that residential buildings with four or more dwelling units, and one or more elevators, designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" ("Covered Multifamily Dwellings") and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability, 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A);

WHEREAS, the accessible and adaptive design provisions of the FHA require that for Covered Multifamily Dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings

2

contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space.  42 U.S.C. § 3604(f)(3)(c) (these provisions and features are referred to herein as the "Accessible Design Requirements");

**D.     Conditions at 2 Gold Street**

WHEREAS, 2 Gold Street is a residential apartment building located at 2 Gold Street in New York, New York.  The complex consists of a tower with elevator access and contains 650 dwelling units, as well as public and common use areas including a fitness center, game room, landscaped roof park, tenants' lounge, rooftop solarium with kitchen, and on-site garage;

WHEREAS, the United States has inspected 2 Gold Street and specifically identified, among other things, the following conditions at 2 Gold Street:

- Entrance door threshold heights exceeding one-half inch without bevels;
- Door clear opening widths of less than a nominal thirty-two inches;
- Bathroom clear floor space of less than thirty inches wide and forty-eight inches long;
- Kitchen clear floor space of less than forty inches wide;
- Kitchen electrical outlets less than twelve inches from adjacent walls, cabinets, and appliances;
- Room wall electrical outlets lower than fifteen inches above the finished floor;

3

- Kitchen sinks and ranges with centerlines less than twenty-four inches from the adjacent wall;

- Toilets with centerlines less than eighteen inches from the adjacent wall;

- Common area doors requiring more than five pounds of force to open;

- Common area doors with closing speeds of less than three seconds;

- Common area doors with maneuvering clearance of less than fifty-four inches wide;

- Mailboxes higher than forty-eight inches above the finished floor;

- Objects in common areas protruding more than four inches from the wall;

- Common area bathroom compartments less than sixty inches wide and fifty-nine inches deep; and

- Common area intercom and emergency ring buttons; phones; coat and towel hooks; and paper towel, seat cover, and soap dispensers higher than fifty-four inches above the finished floor (for a side approach reach), or forty-eight inches above the finished floor (for a forward approach reach).

WHEREAS, the United States alleges, and the Developer Defendants deny, that the above conditions are failures to meet the Accessible Design Requirements;

### E.      Consent of the Parties to Entry of this Decree

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).  The parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial;

4

WHEREAS, this Consent Decree pertains solely to 2 Gold Street and does not make any representations regarding, or release Developer Defendants from any potential liability related to, any other Covered Multifamily Dwellings that any of the Developer Defendants may have designed or constructed other than 2 Gold Street;

WHEREAS, Developer Defendants agree to make modifications to 2 Gold Street as set forth herein;

WHEREAS, the parties' entry into this Consent Decree is not intended to and does not limit the Developer Defendants, individually or collectively, from instituting a separate action seeking contribution, or damages in the nature of indemnification or breach of contract or for any related reason, from any individual or entity involved in the design and construction of the property that is the subject of this Consent Decree, including but not limited to Avinash K. Malhotra, Architects, and Avinash K. Malhotra; and

WHEREAS, the parties agree to the entry of this Consent Decree.

**It is hereby ORDERED, ADJUDGED, and DECREED:**

## I. GENERAL INJUNCTION

1.      The Developer Defendants and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. § 3604.

## II. CORRECTIVE ACTIONS / RETROFITS AT 2 GOLD STREET

2.      The United States alleges that 2 Gold Street was not designed or constructed in accordance with the FHA or the Fair Housing Accessibility Guidelines, Design Guidelines for

Accessible/Adaptable Dwellings, 56 Fed. Reg. 9472 (Mar. 6, 1991) (the "Guidelines").  Without admitting liability, the Developer Defendants agree to address the conditions alleged to be violations of the FHA by making the modifications described in Appendices A and B annexed hereto.

**A.     Modifications to the Public and Common Use Areas**

3.     The Developer Defendants acknowledge that certain conditions exist in the public and common use areas of 2 Gold Street that do not meet standards in the Guidelines.  The Developer Defendants agree to modify the public and common use areas of 2 Gold Street by taking the actions described herein.

4.     As soon as reasonably possible, but no later than six (6) months after the entry of this Consent Decree, the Developer Defendants shall finish the retrofits listed in Appendix A. The Developer Defendants shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

5.     No later than fifteen (15) days after the entry of this Consent Decree, the Developer Defendants shall cause TF Cornerstone Inc. to provide written notices to all tenants at 2 Gold Street stating that the retrofits required by this Consent Decree will be performed to the public and common use areas of 2 Gold Street.  Such notice shall conform to Appendix C and may be delivered electronically or in hard copy.

6.     The Developer Defendants shall certify to the United States in writing that the notices required by paragraph 5 have been distributed and shall specify the manner in which they were distributed, no later than fifteen (15) days after such distribution.  Such certification shall include the names and addresses of the persons to whom the notices were distributed.

**B.     Modifications to Dwelling Unit Interiors**

7.      The Developer Defendants acknowledge that certain conditions exist in dwelling unit interiors of 2 Gold Street that do not meet standards in the Guidelines.  The Developer Defendants agree to cause the dwelling unit interiors at 2 Gold Street to be modified as described below.

8.      As soon as reasonably possible, but no later than the earlier of (a) vacancy, or (b) six (6) months after the entry of this Consent Decree, the Developer Defendants shall cause the retrofits listed in Appendix B to be completed, except that those retrofits listed in Appendix B that are to be performed "on request" shall be completed no later than the time specified in Appendix B for each retrofit.  The Developer Defendants shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

9.      No later than fifteen (15) days after the date of the entry of this Consent Decree, the Developer Defendants shall cause TF Cornerstone Inc. to inform each tenant at 2 Gold Street that: (1) the United States has alleged that certain features of the tenant's unit do not meet the accessible and adaptive design requirements of the FHA; (2) to settle this lawsuit, the Developer Defendants agreed to cause retrofits of certain features of 2 Gold Street to be completed to make them more accessible; and (3) the scheduling of the retrofits will take into account the preferences and convenience of the tenant or future tenant and that relocation costs, if any, will be provided in advance.  The notice shall be substantially in the form of Appendices D-1 and D-2 and may be delivered electronically or in hard copy.

10.      The Developer Defendants shall certify to the United States in writing that the notices described in paragraph 9 have been distributed and shall specify the manner in which

7

they were distributed, within fifteen (15) days after such distribution.  Such certification shall include the names and addresses of the persons to whom the notices were distributed.

11.     In the event that a tenant of a unit within 2 Gold Street scheduled to undergo a modification is dislocated from his or her unit for more than fourteen (14) consecutive hours, the Developer Defendants shall cause 2 Gold L.L.C. to pay to such tenant, pro rata, the applicable federal government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day or half-day that the tenant is dislocated for more than fourteen (14) consecutive hours.  Such payment shall be made prior to the commencement of any retrofit work on the tenant's unit, so that the tenant can use the money to obtain alternative living accommodations while dislocated.

12.     Present and/or future tenants may not be charged any additional rent, deposit, fee, or other consideration for the units in which retrofits are or may be implemented because of completed, contemplated, or possible retrofits.  The Developer Defendants shall take no adverse action against any present and/or future tenant because such person requests to have his or her apartment, or prospective apartment, modified in accordance with this Consent Decree.  Nothing in this paragraph shall restrict or impede the Developer Defendants' rights to continue, in a non-discriminatory manner, to lawfully establish and raise rents consistent with their business goals and obligations and with market conditions, including increasing rents after the expiration of a lease due to an increase in the market value of the unit, whether or not such increase is on account of upgrades to such unit (other than retrofits required under this Consent Decree) done at or about the same time as retrofits required under this Consent Decree.

### III.  NEUTRAL INSPECTOR

13.    The Developer Defendants shall enter into a contract with a neutral inspector(s) approved by the United States ("Inspector(s)") to conduct on-site inspections of all retrofits performed under this Consent Decree to determine whether modifications at 2 Gold Street have been made in compliance with the specifications in Appendices A and B.  The Inspector(s) shall have expertise in the design and construction requirements of the FHA.

14.    The Inspector(s) may, upon request of the Developer Defendants, review and comment upon the sufficiency of all proposed modifications in writing in advance of any repair by such Developer Defendant, but such review and comment shall be completed no later than fourteen (14) days after the request.

15.    An initial inspection of 2 Gold Street shall take place within thirty (30) days, or as soon thereafter as practicable, after the completion of all of the retrofits set forth in Appendices A and B required to be completed within six (6) months of the entry of this Consent Decree. Additional inspections shall be scheduled, as necessary, for any retrofits required to be completed at 2 Gold Street after the date of the initial inspection.

16.    For each inspection, the Developer Defendants shall give the United States at least three (3) weeks prior notice of the inspection and shall give the United States an opportunity to have its representative present for the inspection.

17.    The Inspector(s) shall set out in writing the results of his or her inspection, including any deficits, and shall send that report to the Developer Defendants and to the United

9

States.[1] The report shall state whether the retrofits required by the applicable Appendix have been completed, and shall list any required retrofits that were not completed.

18.     If the inspection indicates that not all of the required retrofits have been made as specified in the applicable Appendices, the Developer Defendants shall correct any deficiencies within sixty (60) days and shall pay for another inspection by the same Inspector(s) to certify that the deficiencies have been corrected. This process shall continue until the Inspector(s) certifies that all of the necessary modifications have been made. The Developer Defendants shall pay all of the Inspector(s)'s reasonable costs associated with these inspections, and such payments shall be made without regard to the Inspector(s)'s findings. Upon reasonable notice, representatives of the United States shall be permitted to inspect the modifications and/or the third-party inspection reports provided for in this Consent Decree, to ensure compliance.

## IV.  IMPEDIMENTS TO PERFORMANCE

19.     In the event that any act or omission beyond the Developer Defendants' control, and occurring without their fault or negligence, affects the performance of any requirement in Section II or III of the Consent Decree, the Developer Defendants and the United States shall endeavor, in good faith, to determine whether modifications to this Consent Decree are necessary and, if so, to seek jointly such modifications from the Court. If such efforts are unsuccessful, either party may seek relief from the Court.

---

[1]     For purposes of this Consent Decree, notices provided to the United States shall be addressed to Chief, Civil Rights Unit, Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, Third Floor, New York, New York 10007.

## V.  TRANSFER OF INTEREST IN PROPERTIES

20.     The sale or transfer of ownership, in whole or in part, of any Developer

Defendant's interest(s) in 2 Gold Street shall not affect any Developer Defendant's continuing

obligation to retrofit, and/or conduct or allow inspections or surveys of, 2 Gold Street, as

specified in this Consent Decree, unless that Developer Defendant has obtained in writing, as a

condition of sale or transfer, the purchaser or transferee's commitment to assume such

obligations, so that the purchaser or transferee will be bound by the terms of this Consent

Decree to make retrofits and allow or conduct inspections or surveys as set forth in this Consent

Decree, and will be subject to the jurisdiction of this Court.

21.     Should an owner of 2 Gold Street decide to sell or transfer any ownership of 2

Gold Street, in whole or in part, or any portion thereof, prior to the completion of the retrofits

specified in this Consent Decree's Appendices describing the retrofits for 2 Gold Street, such

owner will, at least thirty (30) days prior to completion of the sale or transfer: (a) provide each

prospective buyer with a copy of this Consent Decree and written notice that the property is

subject to this Consent Decree, including specifically Developer Defendants' obligations to

either (i) complete required retrofit work and allow inspections, or (ii) assign such obligations to

the purchaser or transferee by obtaining the purchaser or transferee's commitment to be bound

by this Order, subject to the jurisdiction of this Court; and (b) provide to the United States, by

facsimile and first-class mail, written notice of the owner's intent to sell or transfer ownership,

along with a copy of the notice sent to each buyer, and each buyer's name, address and

telephone number.

11

## VI. NON-DISCRIMINATION IN OTHER DESIGN AND CONSTRUCTION

22.      For the duration of this Consent Decree, each Developer Defendant shall
maintain, and provide to the United States upon request, the following information and
statements regarding any Covered Multifamily Dwellings purchased, developed, built, designed,
and/or engineered, in whole or in part, by such Developer Defendant or by any entities in which
such Developer Defendant has a position of control as an officer, director, member, or manager,
or has a ten-percent (10%) or larger ownership share:

- the name and address of the project;

- a description of the project and the individual residential units;

- the name, address, and telephone number of the civil engineer(s) involved with the
  project, to the extent the information is available;

- a statement from a civil engineer acknowledging and describing his/her knowledge of and
  training in the requirements of the FHA and in the field of accessible site design,
  certifying that he/she has reviewed the engineering documents for the project and that the
  design specifications therein fully comply with the requirements of the FHA, and stating
  a Standard with which the design specifications comply.  "Standard" as used in this
  Consent Decree means either: (i) the Guidelines; (ii) a standard designated as an FHA
  safe harbor by the Department of Housing and Urban Development; or (iii) a recognized,
  comparable, objective standard of accessibility that has been found by this district court
  or the Second Circuit to incorporate the requirements of the FHA.

- the name, address and telephone number of the architect(s) who are employed or retained
  by any Developer Defendant and are involved with the project;

12

- a statement from all architect(s) who are employed or retained by any Developer Defendant and are involved with the project, acknowledging and describing his/her knowledge of and training in the requirements of the FHA and the Guidelines, and in the field of accessible site design, certifying that he/she has reviewed the architectural plans for the project and that the design specifications therein fully comply with the requirements of the FHA, and stating a Standard with which the design specifications comply.

23.     If the engineering documents or architectural plans referred to in paragraph 22 are revised, and the revisions could have any impact on whether the dwellings or complex complies with the FHA, the associated Developer Defendant shall obtain, maintain, and provide to the United States upon request, a statement from the site engineer(s) or architect(s) who are employed or retained by any such Developer Defendant and are involved with the project, as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the FHA, and stating a Standard with which the design specifications comply.

24.     The Developer Defendants shall design and construct all new Covered Multifamily Dwellings in full compliance with a Standard, where a single Standard has been used in its entirety (*i.e.*, where every design feature within the property in question complies with all of the provisions in the particular selected Standard that address the FHA requirements). During the term of this Consent Decree, upon reasonable notice, the United States will be permitted full access to such properties to inspect for compliance with such Standards, rules, and laws.

13

25.     Nothing in this Consent Decree, including paragraph 1, shall be construed to impose any liability or obligation on the Developer Defendants, other than the liabilities and obligations set forth in this Consent Decree with respect to 2 Gold Street, except as set forth in Section VI and paragraphs 45, 47, 49 and 50 of this Consent Decree.

## VII. PAYMENTS TO AGGRIEVED PERSONS

26.     Within thirty (30) days after entry of this Consent Decree, the Developer Defendants shall deposit in an interest-bearing account the aggregate sum of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000) for the purpose of compensating any aggrieved persons who may have suffered as a result of the Developer Defendants' discriminatory housing practices regarding 2 Gold Street.  This deposited money, plus any accrued interest, shall be referred to as the "Initial Settlement Fund."

27.     No later than fifteen (15) days after the entry of this Consent Decree, the Developer Defendants shall publish the Notice to Persons Who May Have Suffered from Inadequate Accessibility at 2 Gold Street ("Notice") at Appendix E informing readers of the availability of compensatory funds.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in each of the following newspapers: the *Wall Street Journal*; *amNew York*; the *New York Post*; and the *Downtown Express*.  The three publication dates shall be separated from one another by twenty-one (21) days.  For the *Wall Street Journal*, at least two of the publication dates shall be on a Saturday.  For the *New York Post*, at least two of the publication dates shall be on a Sunday.  Within ten (10) days after the last publication date, the Developer Defendants shall provide the newspapers containing the Notice to the United States.

28.     No later than fifteen (15) days after entry of this Consent Decree, the Defendants shall place on http://2goldstreet.com and http://www.tfcornerstone.com a link to an electronic version of the Notice in an Adobe Acrobat Portable Document Format ("PDF"). The link should state "Notice to Persons Who May Have Suffered from Inadequate Accessibility at 2 Gold Street," and should appear on the upper half of the website, in a conspicuous font style and color, in a font size no smaller than the font size for any of the terms "Residences," "Amenities," or "Availabilities" as they appeared on http://2goldstreet.com as of June 20, 2012.

29.     No later than fifteen (15) days after the entry of this Consent Decree, the Developer Defendants shall send a copy of the Notice to each of the following organizations:

Brooklyn Center for Independence of the Disabled
27 Smith Street, Suite 200
Brooklyn, New York  11201;

Bronx Independent Living Services
4419 Third Avenue, Suite 2C
Bronx, New York  10457;

Center for Independence of the Disabled, NY
841 Broadway, #301
New York, New York  10003;

Disability Rights Advocates
1560 Broadway, 10th Floor
New York, New York  10036;

Fair Housing Justice Center
5 Hanover Square, 17th Floor
New York, New York 10004;

Harlem Independent Living Center
289 St. Nicholas Avenue, Suite 21, Lower Level
New York, New York  10027; and

15

United Spinal Association
75-20 Astoria Blvd.
Jackson Heights, New York 11370.

30.    No later than thirty (30) days after the entry of this Consent Decree, the
Developer Defendants shall send, by first-class mail, postage pre-paid, a copy of the Notice to
each past or present tenant at 2 Gold Street. For past tenants, the Developer Defendants will
have complied with the requirements of this paragraph by mailing such notice to the forwarding
address provided by the former tenant at the time the former tenant moved out of 2 Gold Street.
No later than sixty (60) days after entry of this Consent Decree, the Developer Defendants shall
certify to the United States that the Notices have been sent.

31.    The United States may make its own efforts to locate and provide notice to
potential aggrieved persons.

32.    Developer Defendants shall permit the United States, upon reasonable notice, to
review any non-privileged records that may reasonably facilitate its investigations to locate
allegedly aggrieved persons and make determinations regarding their potential claims. In
addition, Developer Defendants shall identify to the United States any allegedly aggrieved
persons or any past, present, or prospective tenants of 2 Gold who have household members with
disabilities or regular guests with disabilities, to the extent that the Developer Defendants, or
their employees or agents at 2 Gold, possess the information required to make such
identifications.

33.    The United States shall investigate the claims of allegedly aggrieved persons and
shall determine which persons are aggrieved and an appropriate amount of damages that should
be paid to each such person. The United States will inform the Developer Defendants in writing

16

of each of its determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim. If the United States determines that the Initial Settlement Fund is insufficient to compensate the aggrieved persons at 2 Gold, the United States shall be entitled to make determinations that award aggrieved persons, in the aggregate, a total amount exceeding the amount in the Initial Settlement Fund, but not exceeding THREE HUNDRED THOUSAND DOLLARS ($300,000).

34.     If a Developer Defendant disputes the amount of or entitlement to a payment to an aggrieved person, such Developer Defendant shall, within twenty (20) days after receiving notice of a determination (a "Determination") from the United States, provide a written objection to the United States, along with any information or documents that it believes may refute the aggrieved person's claim. The parties may agree to extend the Developer Defendants' time to object to any Determination for good cause shown. The United States shall give due consideration to any objections it receives from a Developer Defendant and shall submit, following any objection, its reconsidered determination (a "Reconsidered Determination") to the Developer Defendants, in writing, setting forth the aggrieved person and the amount that the aggrieved person shall be paid. If a Developer Defendant disputes the Reconsidered Determination, the Developer Defendant may file an objection with the Court, to which the United States may respond, and the Court may sustain or overrule the objection.

35.     The Developer Defendants shall, no later than thirty (30) days after receiving a Determination to which no objection has been made, fifteen (15) days after receiving a Reconsidered Determination to which no objection has been filed with the Court, or fifteen (15) days after any decision by the Court overruling a filed objection and/or issuing an order to award

17

the aggrieved persons a total amount exceeding the amount of the Initial Settlement Fund, whichever is earliest, deliver to the United States checks payable to aggrieved persons in the amounts identified by the United States (or as directed by the Court, as applicable). In no event shall the aggregate of all such checks exceed the amount of three hundred thousand dollars ($300,000). No aggrieved person shall be paid until he/she has executed and delivered to the United States, with a copy to the Developer Defendants, the release at Appendix F.

36.     No adverse action shall be taken against any person because such person cooperates with the United States in its investigations, makes a claim, or seeks to make a claim under Section VII of this Consent Decree.

37.     In the event that less than the total amount in the Initial Settlement Fund including accrued interest is distributed to aggrieved persons, then, no later than the earlier of (a) when the United States determines that no further aggrieved persons will be identified, or (b) the expiration of this Consent Decree, any remainder in the Initial Settlement Fund shall be distributed to a qualified organization(s) mutually agreed upon by the United States and the Developer Defendants, subject to the approval of the Court, for the purpose of conducting fair housing enforcement-related activities in New York City.

## VIII.  CIVIL PENALTY

38.     Within thirty (30) days after the date of the entry of this Consent Decree, the Developer Defendants shall pay a civil penalty of THIRTY-FIVE THOUSAND DOLLARS ($35,000) pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. Said sums shall be paid by submitting a check made payable to the "United States of America Department of the Treasury" to the United States.

18

## IX. EDUCATIONAL PROGRAM

39.     No later than thirty (30) days after the entry of this Consent Decree, each Developer Defendant shall provide a copy of this Consent Decree to all of its agents and employees materially involved in the design or construction of 2 Gold Street and secure the signed statement from each such agent or employee acknowledging that he or she has received the Consent Decree, and has had an opportunity to read the Consent Decree and to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix G.

40.     During the term of this Consent Decree, any new agent or employee of a Developer Defendant who will have any supervisory authority over the design or construction of 2 Gold Street shall, no later than thirty (30) days after the date he or she commences such agency or employment relationship with such Developer Defendant, be given a copy of this Consent Decree by such Developer Defendant, and such Developer Defendant shall require each such new agent or employee to sign a statement acknowledging that he or she has received the Consent Decree, and has had an opportunity to read the Consent Decree and to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix G.

41.     No later than thirty (30) days after the entry of this Consent Decree, each Developer Defendant shall provide a copy of this Consent Decree to all of its agents and employees who will be directly involved in the rental of units at 2 Gold Street, and/or the provision of services to residents at 2 Gold Street, and secure the signed statement from each such agent or employee acknowledging that he or she has received the Consent Decree, and has

19

had an opportunity to read the Consent Decree and to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix G.

42.      During the term of this Consent Decree, any new agent or employee of a Developer Defendant who will be directly involved in the renting of units at 2 Gold Street, and/or the provision of services to residents at 2 Gold Street, shall, no later than thirty (30) days after the date he or she commences an agency or employment relationship with such Developer Defendant, be given a copy of this Consent Decree by such Developer Defendant, and such Developer Defendant shall require each such new agent or employee to sign a statement, acknowledging that he or she has received the Consent Decree, and has had an opportunity to read the Consent Decree and to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix G.

43.      In lieu of providing individuals or entities with copies of the Consent Decree as required by the preceding paragraphs of Part IX, a Developer Defendant may, with the United States' advance written approval of the form and content of any proposed summary, instead provide a summary of the Consent Decree designed to provide personnel with information relevant to their positions. Copies of the Consent Decree (or approved summary) may be provided electronically or by a link to a website where a copy of the Consent Decree (or approved summary) may be found.

44.      The Developer Defendants shall also ensure that they and their employees and agents who have any supervisory authority over the design and/or construction of 2 Gold Street have access to a copy of, are familiar with, and have had the opportunity to review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and the United States Department

20

of Housing and Urban Development, Fair Housing Act Design Manual, A Manual to Assist
Builders in Meeting the Accessibility Requirements of the Fair Housing Act (August 1996, Rev.
April 1998).  The Developer Defendants and all employees and agents whose duties, in whole or
in part, involve the management, sale and/or rental of units at 2 Gold Street shall be informed of
the FHA's accessibility, reasonable accommodation and reasonable modification requirements.

45.     No later than ninety (90) days after the date of entry of this Consent Decree, each
Developer Defendant and all of its employees and agents whose duties, in whole or in part,
involve or will involve supervision over the development, design and/or construction of Covered
Multifamily Dwellings of the type at issue in this case shall undergo training on the design and
construction requirements of the FHA.  Each Developer Defendant and all of its employees and
agents whose duties, in whole or in part, involve or will involve supervision over the rental of
apartments and/or the provision of services to residents of Covered Multifamily Dwellings of the
type at issue in this case shall undergo training on the portions of the FHA that relate generally to
accessibility requirements, as opposed to technical design and construction requirements.  The
training(s) shall be conducted by a qualified third-party individual or firm, not associated with
any Developer Defendant or its counsel, and approved by the Department of Justice (a "qualified
trainer"); and any expenses associated with this training shall be paid by such Developer
Defendant.  Such Developer Defendant shall provide to the United States, no later than thirty
(30) days before the training, the name(s), address(es) and telephone number(s) of the trainer(s);
and copies of the training outlines and any materials to be distributed by the trainers.  Such
Developer Defendant shall provide to the United States, no later than thirty (30) days after the
training, certifications executed by such Developer Defendant and its covered employees and

agents confirming their attendance, in a form substantially equivalent to <u>Appendix H</u>.  The

United States may waive the training requirements in the foregoing paragraph for such

employees or agents who received training from a qualified trainer on the design and

construction requirements or the accessibility requirements of the FHA in the six (6) months

prior to the entry of this Consent Decree upon the Developer Defendants' provision of executed

certifications from each such employee or agent.

## X.  NOTICE OF DEVELOPER DEFENDANTS' NON-DISCRIMINATION POLICY

46.     No later than ten (10) days after the date of entry of this Consent Decree, the

Developer Defendants shall post and prominently display in the sales or rental offices of 2 Gold

Street a sign no smaller than 10 by 14 inches indicating that all dwellings are available for rental

on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. Part 110 will satisfy this

requirement.

47.     For the duration of this Consent Decree, in all future advertising in newspapers

and electronic media, and on pamphlets, brochures and other promotional literature regarding 2

Gold Street or any new Covered Multifamily Dwelling that any Developer Defendants may

develop or construct, such Developer Defendants shall place, in a conspicuous location, a

statement that the dwelling units include features for persons with disabilities required by the

federal FHA.

48.     No later than one hundred eighty (180) days after the date of entry of this Consent

Decree, each Developer Defendant shall submit to the United States an initial report regarding

the signed statements of such Developer Defendant's employees and agents who have completed

the training program specified in paragraph 45 of this Consent Decree.  Thereafter, during the

22

term of this Consent Decree, each Developer Defendant shall, on or prior to the anniversary of the entry of this Consent Decree, submit to the United States a report regarding the signed statements of new employees and agents that, in accordance with paragraphs 39 and 40 of this Consent Decree, they have received and have had the opportunity to read the Consent Decree, and had an opportunity to have questions about the Consent Decree answered, except that the last report shall be due on or before sixty (60) days prior to the anniversary.

49.     For the duration of this Consent Decree, each Developer Defendant shall advise the United States in writing within fifteen (15) days after receipt of any written administrative or judicial fair housing complaint regarding any Covered Multifamily Dwelling owned, managed, and/or designed or constructed by it, or against any of its employees or agents working at or for any such property, alleging unlawful discrimination under the FHA. Upon reasonable notice, each Developer Defendant shall also provide the United States all non-confidential information it may request concerning any such complaint. Such Developer Defendant shall also advise counsel for the United States, in writing, within fifteen (15) days after the resolution of any such complaint.

50.     For the term of this Consent Decree, each Developer Defendant is required to preserve all records related to this Consent Decree for 2 Gold Street and any other Covered Multifamily Dwellings designed, constructed, owned, operated, or acquired by it during the duration of this Consent Decree. Upon reasonable notice to any Developer Defendant, representatives of the United States shall be permitted to inspect and copy any such records of such Developer Defendant or inspect any developments or residential units under such Developer Defendant's control bearing on compliance with this Consent Decree at any and all

23

reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to such Developer Defendant and tenants from such inspections.

## XI.  LOW-INCOME HOUSING TAX CREDIT PROGRAM COMPLIANCE

51.     Developer Defendants are hereby notified that, in the event that the Developer Defendants fail to comply with any of the terms of this Consent Decree and the United States obtains an order establishing such noncompliance, the United States may take any appropriate action, including but not limited to notifying the appropriate state housing finance agency of the violation. See 26 U.S.C. § 42(m)(1)(B)(iii).

## XII.  RESOLUTION, DURATION OF CONSENT DECREE AND TERMINATION OF LEGAL ACTION

52.     This Consent Decree shall remain in effect for three (3) years following entry of this Consent Decree by the Court.  By consenting to entry of this Consent Decree, the parties agree that in the event that a Developer Defendant engages in any conduct occurring after entry of this Consent Decree that leads to a determination of a violation of the FHA, such conduct shall constitute a "subsequent violation" by such Developer Defendant pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

53.     The Complaint in this action is hereby dismissed as to the Developer Defendants without prejudice to reinstatement in accordance with the next paragraph.  The Complaint is not dismissed as to the Architect Defendants.

54.     The United States shall be entitled to reinstate the Complaint in this Action at any time during the duration of this Consent Decree against any Developer Defendant that the Court determines has failed to perform, in a timely manner, any act required by this Consent Decree or has otherwise failed to act in conformance with any provision of this Consent Decree.

24

55.     The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Consent Decree.  The United States may move the Court to extend the duration of the Consent Decree in the interests of justice.  Each Developer Defendant reserves the right to object to any such extension and to oppose any such motion.  The duration of the Consent Decree may also be extended by the mutual written agreement of the United States and the Developer Defendants.

56.     The United States and the Developer Defendants shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution.  However, in the event of a failure by any Developer Defendant to perform, in a timely manner, any act required by this Consent Decree or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

57.     Upon the expiration of the Consent Decree, the Complaint in this action shall be dismissed with prejudice as to the Developer Defendants.

## XIII.  TIME FOR PERFORMANCE

58.     Any time limits for performance imposed by this Consent Decree may be extended by the mutual written agreement of the United States and the relevant Developer Defendants.

25

## XIV.  COSTS OF LITIGATION

59.    Each party to this litigation will bear its own costs and attorney's fees associated with this litigation.

The undersigned apply for and consent to the entry of this Consent Decree:

*For the United States:*

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

PREET BHARARA
United States Attorney

By:     _C. Schoenberger_
LI YU
CARINA H. SCHOENBERGER
EMILY E. DAUGHTRY
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. Nos. (212) 637-2734, 2822, 2777
Fax Nos. (212) 637-2717, 2702
Li.Yu@usdoj.gov
Carina.Schoenberger@usdoj.gov
Emily.Daughtry@usdoj.gov

*For Developer Defendants:*

By:     _Lawrence S. Spiegel_
LAWRENCE S. SPIEGEL
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP & AFFILIATES
Four Times Square
New York, NY 10036
Tel. (212) 735-3000
Fax. (212) 735-4155
Lawrence.Spiegel@skadden.com

*[handwritten, left margin:]* This Consent Decree is approved. So ordered. Robert P. Patterson USDJ. April 24, 2013

26

# APPENDIX A
# PUBLIC AND COMMON USE AREAS

As soon as reasonably possible, but no later than six (6) months from the entry of this Consent Decree Developer Defendants shall finish the retrofits listed in this Appendix A.

## FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 2

### BUILDING MAIN ENTRANCE AND LOBBY

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Opening force is 20 lbs. | Will decrease opening force to no more than 8.5 lbs. |

### CHILDREN'S PLAY ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Opening force is 9 lbs. | Will decrease opening force to no more than 5 lbs. |
| Entrance door | Closing speed is less than 3 second minimum | Will modify the door so that it will take at least 3 seconds to move from an open position of 90 degrees to an open position of approximately 12 degrees. |

### CLUB ROOM (CLUB 2 GOLD)

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance doors | Threshold is 1" high on the hallway side | Will make threshold flush; or 1/4" high |

|  |  | max.; or 1/2" high max. beveled at 1:2 above 1/4." |
| --- | --- | --- |
| Entrance doors | Opening force is 14 lbs. | Will decrease opening force to no more than 5 lbs. |
| Door to the billiards room | Threshold is 3/4" high | Will make threshold flush; or 1/4" high max.; or 1/2" high max. beveled at 1:2 above 1/4." |

## FITNESS CENTER

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
| --- | --- | --- |
| Entrance door | Threshold is 3/4" high on the hallway side; 1" high on the fitness center side; beveled at 1:2 | Will make threshold flush; or 1/4" high max.; or 1/2" high max. beveled at 1:2 above 1/4." |
| Entrance door | Opening force is 9 lbs. | Will decrease opening force to no more than 5 lbs. |
| Intercom button | 58" above the finished floor | Will lower intercom button to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |
| Paper towel dispenser at the drinking fountain | 63 1/2" above the finished floor | Will lower paper towel dispenser to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |
| Door to the outside plaza | Opening force is 14 lbs. | Will decrease opening force to no more than 5 lbs. |
| Door to the outside plaza | Threshold is 2" high on the room side; 1 5/8" high on the plaza side | Will make threshold flush; or 1/4" high max.; or 1/2" high max. beveled at 1:2 |

2

| | | above 1/4." |
|---|---|---|
| Stretch room entrance door | Opening force is 8 lbs. | Will decrease opening force to no more than 5 lbs. |
| Stretch room entrance door | Threshold is 1 1/4" high | Will make threshold flush; or 1/4" high max.; or 1/2" high max. beveled at 1:2 above 1/4." |
| Stretch bars in stretch room | Stretch bars protrude 8" at 38 1/2" above the finished floor | Will provide cane detectable barriers below the stretch bars. |

### FITNESS CENTER – WOMEN'S TOILET ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Opening force is 14 lbs. | Will decrease opening force to no more than 5 lbs. |
| Lavatory | Lavatory has no pipe insulation | Will insulate pipes. |
| Paper towel dispenser | Paper towel dispenser is 56" above the finished floor | Will lower paper towel dispenser to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |
| Toilet compartment size | Toilet compartment is 48" wide x 59 3/8" deep | Will remove toilet compartment and enlarge adjoining toilet compartment. |
| Toilet | Toilet centerline is 19 1/4" from the side wall | In conjunction with the retrofit to the toilet compartment, will provide 18" centerline from the side wall; provided that this may be satisfied by providing a grab bar, in compliance with Section 609 of ANSI A117.1 (1986 edition), mounted on a plate at least the length of the grab bar, where |

| | | the plate extends 12" min. above and 6" min. below the grab bar, where there is 18" between the toilet centerline and the plate on which the grab bar is mounted. |
|---|---|---|
| Grab bar | Rear grab bar extends 50" from the rear wall | Will extend rear grab bar to 52" min. from the rear wall. |
| Toilet paper dispenser | Toilet paper dispenser is 36" to 47" from the rear wall | Will adjust toilet paper dispenser to 36" max. from the rear wall. |

## FITNESS CENTER – MEN'S TOILET ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Opening force is 9 lbs. | Will decrease opening force to no more than 5 lbs. |
| Lavatory | Lavatory has no pipe insulation | Will insulate pipes. |
| Toilet compartment size | Toilet compartment is 48" wide x 59 3/8" deep | Will remove toilet compartment and enlarge adjoining toilet compartment. |
| Toilet | Toilet centerline is 17" to 18" from the side wall | In conjunction with the retrofit to the toilet compartment, will provide 18" centerline from the side wall; provided that this may be satisfied by providing a grab bar, in compliance with Section 609 of ANSI A117.1 (1986 edition), mounted on a plate at least the length of the grab bar, where the plate extends 12" min. above and 6" min. below the grab bar, where there is 18" between the toilet centerline and the plate on which the grab bar is mounted. |
| Toilet paper dispenser | Toilet paper dispenser is 36" to 47" from | Will adjust toilet paper dispenser to 36" |

| | the rear wall | max. from the rear wall. |
|---|---|---|
| Grab bars | Grab bars are spaced 1 5/8" from the wall | Will adjust grab bars to 1 1/2" from the wall. |

**LAUNDRY ROOM**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Opening force is 7 lbs. | Will decrease opening force to no more than 5 lbs. |
| Entrance door | Closing speed is less than 3 second minimum | Will modify the door so that it will take at least 3 seconds to move from an open position of 90 degrees to an open position of approximately 12 degrees. |
| Intercom button | 57 1/4" above the finished floor | Will lower intercom button to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |
| Payment card vending machine | Vending machine protrudes 7 1/8" at 49" above the finished floor; card slot is 58 1/8" above the finished floor | Will provide cane detectable barrier below the vending machine; will lower the vending machine to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |
| Sink | Sink has no knee clearance for forward approach | Will provide knee and toe clearance and pipe insulation. |
| Sink | Countertop is 35 1/4" above the finished floor | Will lower the sink to 34" max. above the finished floor. |
| Door to the outside plaza | Threshold is 1 5/8" high on the room side; | Will make threshold flush; or 1/4" high |

5

| | 1 1/2" on the exterior side | max.; or 1/2" high max. beveled at 1:2 above 1/4." |
|---|---|---|

## LEASING OFFICE

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Entrance door has 16" latch clearance on the pull side | Will provide 18" min. latch clearance. |
| Entrance door | Marble threshold is 1" high on the hallway side. | Will make threshold flush; or 1/4" high max.; or 1/2" high max. beveled at 1:2 above 1/4." |
| Coat hooks | Coat hooks are 67 1/2" above the finished floor. | Will lower coat hooks to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |

## MAILBOXES

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Mailboxes | Top two rows of mailboxes are at 55 7/8" and 50 3/8" above the finished floor | Will assign mailboxes that are 48" max. above the finished floor to tenants with disabilities or, if reassignment is not possible, will provide alternative mail service by building staff for any disabled residents assigned to a mailbox more than 48" above the finished floor.  The concierge desk will arrange for daily mail delivery to the apartment of any disabled resident assigned to a mailbox more than 48" above the finished floor at a time |

| | | between 8:30 am and 6:30 pm.  Residents will be notified of the mailbox reassignment and alternative mail service procedures in writing, and notices of this procedure will be posted on building bulletin boards. |
| --- | --- | --- |

## PARKING – VALET STAGING AREA

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
| --- | --- | --- |
| Door from the mailroom to the service elevator corridor | Opening force is 10 lbs. | Will decrease opening force to no more than 5 lbs. |
| Door from the mailroom to the service elevator corridor | Threshold is beveled at 1:1.5 | Will bevel threshold at no steeper than 1:2. |
| Door from the service elevator corridor to the garage vestibule | Opening force is 15 lbs. | Will decrease opening force to no more than 5 lbs. |
| Door from the service elevator corridor to the garage vestibule | Closing speed is less than 3 second minimum | Will modify the door so that it will take at least 3 seconds to move to from an open position of 90 degrees to an open position of approximately 12 degrees. |
| Door from the garage vestibule to the garage | Opening force is 12 lbs. | Will decrease opening force to no more than 5 lbs. |
| Door from the garage to the stairway vestibule | Opening force is 14 lbs. | Will decrease opening force to no more than 5 lbs. |
| Door from the stairway vestibule to the garage vestibule | Opening force is 13 lbs. | Will decrease opening force to no more than 5 lbs. |
| Route from the garage vestibule to the valet kiosk | Unobstructed accessible route is blocked by parking spaces | Will repaint route to indicate no parking area and provide accessible route. |

**PLAZA – 3RD FLOOR OUTDOOR**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---------|-----------|----------------------|
| Door from Café | Opening force is 8 lbs. | Will decrease opening force to no more than 5 lbs. |
| Door from Café | Threshold at the door from the Café is 5/8" wide | Will reduce threshold to no more than 1/2." |

**POOL AREA**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---------|-----------|----------------------|
| Sink in the kitchen | Sink has no knee clearance for forward approach | Will provide knee and toe clearance and pipe insulation. |
| Sink in the pool area vestibule | Countertop is 36" above the finished floor | Will lower the countertop to 34" max. above the finished floor. |
| Door to the pool area from the Café | Opening force is 15 lbs. | Will decrease opening force to no more than 5 lbs. |
| Door to the pool area from the elevator lobby at the adjacent building | Opening force is 13 lbs. | Will decrease opening force to no more than 5 lbs. |
| Emergency ring button | Emergency ring button is 60" above the finished floor | Will lower emergency ring button to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |
| Emergency phone | Emergency phone is 58 1/2" to 62 3/4" to the buttons | Will lower emergency phone so that buttons are 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward |

| | | approach reach. |
|---|---|---|
| Rinsing showerhead | Fixed showerhead is 76" above the finished floor | Will provide a spray unit on a 60" min. hose. |
| Door to the locker room vestibule from the common hallway | Opening force is 9 lbs. | Will decrease opening force to no more than 5 lbs. |
| Telephone at the door to the locker room vestibule from the common hallway | Telephone is 56 1/2" to 60" above the finished floor to the buttons | Will lower telephone so that buttons are 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |

## POOL AREA – MEN'S LOCKER ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door from the vestibule | Opening force is 9 lbs. | Will decrease opening force to no more than 5 lbs. |
| Entrance door from the vestibule | Entrance door has 44 1/2" maneuvering clearance on the pull side perpendicular to the door | Will provide min. 54" wide maneuvering clearance. |
| Lavatories | Lavatories have knee clearance of 26" above the finished floor at the apron and toe clearance of 6 3/8" above the finished floor | Will provide knee clearance of 29" min. above the finished floor at the apron and toe clearance of 9" min. above the finished floor. |
| Toilet paper dispenser | Toilet paper dispenser is 31" to 41" from the rear wall | Will adjust toilet paper dispenser to 36" max. from the rear wall. |
| Shower stall entrance door | Threshold is 1 1/4" high | Will make threshold flush; or 1/4" high max.; or 1/2" high max. beveled at 1:2 above 1/4." |

9

| | | |
|---|---|---|
| Shower stall entrance door | Entrance door has 4 3/8" latch clearance on the pull side measured to the adjacent lockers | Will provide 18" min. latch clearance. |
| Shower compartment | Compartment 35" deep by 58 1/4" wide | Will remove folding seat encroaching on compartment width. |
| Towel hooks in shower stall | Towel hook on the wall is 66" above the finished floor; towel hook on the door is 76" above the finished floor | Will provide at least one towel hook that is 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |
| Soap dispenser in shower stall | Soap dispenser is 52" above the finished floor and allows only a forward approach | Will lower soap dispenser to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |
| Emergency button at entry door | Emergency button is 55 3/4" above the finished floor | Will lower emergency button to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |

## POOL AREA – WOMEN'S LOCKER ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Entrance door has 9 1/2" clearance on the push side | Will provide 12" min. clearance. |
| Entrance door | Entrance door has 44 1/2" maneuvering clearance on the pull side perpendicular to the face of the door on the locker room side | Will provide min. 54" wide maneuvering clearance. |

| Lavatories | Lavatories have knee clearance of 26" above the finished floor at the apron | Will provide knee clearance of min. 29" above the finished floor at the apron and min. 27" above the finished floor elsewhere. |
|---|---|---|
| Toilet paper dispenser | Toilet paper dispenser is 30 1/2" to 41 1/2" from the rear wall. | Will adjust toilet paper dispenser to 36" max. from the rear wall. |
| Shower compartment | Compartment 35" deep by 58 1/4" wide | Will remove folding seat encroaching on compartment width. |
| Towel hooks in shower stall | Towel hook on the wall is 66 3/4" above the finished floor; towel hook on the door is 76" above the finished floor | Will provide at least one towel hook that is 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |
| Soap dispenser in shower stall | Soap dispenser is 52 1/2" above the finished floor and allows only a forward approach | Will lower soap dispenser to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |
| Emergency button at entry door | Emergency button is 55 3/4" above the finished floor | Will lower emergency button to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |

## POOL AREA – SOLARIUM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Latch clearance on the pull side is obstructed by a trash container | Will relocate trash container to provide unobstructed clearance. |
| Entrance door | Opening force is 8 lbs. | Will decrease opening force to no more than 5 lbs. |

11

**ROOFTOP SOLARIUM**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Opening force is 12 lbs. | Will decrease opening force to no more than 5 lbs. |
| Door from the solarium to the small outdoor plaza | Threshold is 1" high on the exterior side | Will make threshold flush; or 1/4" high max.; or 1/2" high max. beveled at 1:2 above 1/4." |
| Door from the solarium to the large outdoor plaza | Threshold is 1 1/2" high on the exterior side | Will make threshold flush; or 1/4" high max.; or 1/2" high max. beveled at 1:2 above 1/4." |
| Door from the elevator lobby to the large plaza | Closing speed is less than 3 second minimum | Will modify the door so that it will take at least 3 seconds to move to from an open position of 90 degrees to an open position of approximately 12 degrees. |
| Door from the elevator lobby to the large plaza | Threshold is 1 1/2" high on the exterior side; 1" high on the interior side | Will make threshold flush; or 1/4" high max.; or 1/2" high max. beveled at 1:2 above 1/4." |
| Entrance doors to kitchenette | Opening force is 13 lbs. and 16 lbs. | Will decrease opening force to no more than 5 lbs. |
| Sink in kitchenette | Sink has no knee clearance for forward approach | Will provide knee and toe clearance and pipe insulation. |
| Sink in kitchenette | Sink is 35 3/4" above the finished floor | Will lower the sink to 34" max. above the finished floor. |
| Gazebo in the large plaza | Gazebo has no accessible route and may be accessed only via two steps | Will install ramp to provide accessible route to gazebo. |

**ROOFTOP SOLARIUM – UNISEX TOILET ROOM**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Toilet seat | Toilet seat is 20 3/8" above the finished floor | Will lower the toilet seat to 17" to 19" above the finished floor. |
| Grab bar | Side grab bar extends 51 1/2" from the rear wall | Will extend rear grab bar to 52" min. from the rear wall. |
| Grab bars | Grab bars are spaced 1 5/8" from the wall | Will adjust grab bars to 1 1/2" from the wall. |
| Toilet paper dispenser | Toilet paper dispenser is 36" to 47" from the rear wall. | Will adjust toilet paper dispenser to 36" max. from the rear wall. |
| Seat cover dispenser | Seat cover dispenser is 58" above the finished floor | Will lower the seat cover dispenser to 54" max. above the finished floor for side approach reach, or 48" max. above the finished floor for forward approach reach. |
| Lavatory | Lavatory has no pipe insulation | Will insulate pipes. |
| Mirror | Reflecting surface of mirror is 45 1/2" above the finished floor | Will lower the mirror so that the bottom edge of the reflective surface is 40" max. above the finished floor. |

**TRASH CHUTE ROOMS**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Doors | Thresholds are 1" high on the trash room side | Will make thresholds flush; or 1/4" high max.; or 1/2" high max. beveled at 1:2 above 1/4." |

13

**SIDEWALK PLAZA – GOLD ST. AND PLATT ST.**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Handrail extensions | Handrail extensions protrude 12" at 29 1/2" to 29 3/4" above the finished floor | Will provide cane detectable barriers below the handrail extensions. |

14

# APPENDIX B
## UNIT RETROFITS

As soon as reasonably possible, but no later than the earlier of (a) vacancy, or (b) six (6) months after the entry of this Consent Decree the Developer Defendants shall cause the retrofits listed in this Appendix B to be completed, except that those retrofits listed in this Appendix B that are to be performed "on request" shall be completed no later than the time specified for each retrofit.

### UNIT ENTRANCE THRESHOLD
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 416, 516, 614-2614 | Level change at unit entrance 1/2" with no bevel. | Will bevel unit side of threshold at 1:2. |

### TERRACE THRESHOLD
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 405-410, 416, 601-603 | Level change at terrace door exceeds maximum of ¾." | Will provide a lift, compliant with Fair Housing Act Guidelines, at the request of a tenant or a prospective tenant who has signed a lease.  This retrofit shall be completed no later than forty-five (45) days after receiving the request. |

**CLEAR OPENING WIDTH OF DOORS**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 3, SEC (2)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 2712-5212 | Clear opening width at 4th bedroom door less than 31 5/8." | Will modify door to 2' 10" min.; 31 5/8" min. clear opening width. |

**BATHROOM CLEARANCE**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC (2)(a)(i)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units | Clear floor space beyond door swing less than 30" wide minimum by 48" long minimum. | Bathroom door swings will be reversed at the request of a tenant or prospective tenant. This retrofit shall be completed no later than ten (10) days after receiving the request. |

**BATHROOM TOILETS**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 2712-5212 (hall bathroom near unit entry) | Toilet centerline is less than 18" from side wall. | Will install offset flange to move toilet as close to between 16" and 18" away from side wall as the flange will permit. |
| All units and bathrooms except hall bathroom near unit entry in units 2712-5212 | Toilet centerline is less than 18" from side wall. | Will install offset flange to move toilet away from side wall at the request of a tenant or prospective tenant. This retrofit shall be completed no later than forty-five (45) days after receiving the request. |

2

## BATHROOM LAVATORIES
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 401, 402, 403, 405-408, 411, 412, 413, 414, 415 (hall bathroom), 416, 501, 502, 503, 511, 512, 513, 514, 515 (hall bathroom), 516, 603-3303 (hall bathroom), 605-5205, 606-5206, 609-2609, 610-2610, 611-2611, 612-2612 613-2613 (hall bathroom), 614-2614, 601, 1801-3301, 3401-5201 (hall bathroom), 3402-5202, 3403-5203 (master bathroom), 2709-5209 | Lavatory centerline is less than 24" minimum from bathtub and removable base cabinets have insufficient knee and toe clearance. | Will remove base cabinet and cut remaining side supports and apron to provide knee clearance of 27" above the finished floor for a distance of 8" in from the front of the lavatory countertop, and toe clearance of 9" above the finished floor for a distance of 19" in from the front of the lavatory countertop at the request of a tenant or prospective tenant. This retrofit shall be completed no later than ten (10) days after receiving the request. |

## KITCHEN CLEARANCE
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(b)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 602, 1802-3302 | Less than 40" minimum width at refrigerator. | Will install a low-profile refrigerator at the request of a tenant or prospective tenant, upon vacancy, or within the term of the Consent Decree, whichever is earliest. If requested by a tenant or prospective tenant, this retrofit shall be completed no later than ten (10) days after receiving the request. |

3

| All units except 412, 413, 512, 513, 602, 610-2610, 611-2611, and 1802-3302 | Less than 40" minimum width at refrigerator. | Will install a low-profile refrigerator at the request of a tenant or prospective tenant. This retrofit shall be completed no later than ten (10) days after receiving the request. |

## KITCHEN RANGES
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 405-408, 413, 513, 602 | Range centerline less than 24" to side wall. | Will swap range and adjacent cabinet to increase centerline at the request of a tenant or prospective tenant, upon vacancy, or within the term of the Consent Decree whichever is earliest. If requested by a tenant or prospective tenant, this retrofit shall be completed no later than ten (10) days after receiving the request. |
| 409-2609, 411, 511, 604-5204, 605-5205, 606-5206, 611-2611, 1802-3302, 3402-5202, 2711-5211 | Range centerline less than 24" to side wall. | Will swap range and adjacent cabinet to increase centerline at the request of a tenant or prospective tenant. If requested by a tenant or prospective tenant, this retrofit shall be completed no later than ten (10) days after receiving the request. |

**KITCHEN SINK CLEARANCE**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 412, 512, 610-2610 | Sink centerlines less than 24" from adjacent obstruction with no removable base cabinet. | Will install a low-profile refrigerator at the request of a tenant or prospective tenant, or upon vacancy.  If requested by a tenant or prospective tenant, this retrofit shall be completed no later than ten (10) days after receiving the request. |

**KITCHEN OUTLETS**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 411, 412, 414, 416, 511, 512, 514, 516, 601, 602, 609-2609, 610-2610, 612-2612, 614-2614, 1801-3301, 1802-3302, 2709-5209, 2713-5213, 3401-5201 | Kitchen outlets less than 12" from side wall or appliance measured to the centerline of the outlet nearest the side wall or appliance. | Will provide wall-mounted power strips to provide outlets at least 12" from the side wall or appliance. |
| All units except 411, 412, 414, 416, 511, 512, 514, 516, 601, 602, 609-2609, 610-2610, 612-2612, 614-2614, 1801-3301, 1802-3302, 2709-5209, 2713-5213, 3401-5201 | Kitchen outlets less than 12" from the face of the base cabinets to the centerline of the furthest outlet. | Will provide wall-mounted power strips at least 12" from the face of the base cabinets at the request of a tenant or prospective tenant.  This retrofit shall be completed no later than forty-five (45) days after receiving the request. |

5

**ELECTRICAL OUTLETS**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 401-410, 414-416, 501-504, 514-516, 601, 603-3303, 604-5204, 605-5205, 606-5206, 607-5207, 608-5208, 612-2612, 613-2613, 614-2614 | Electrical outlets less than 15" above the finished floor. | Will provide wall-mounted power strips at least 15" above the finished floor at the request of a tenant or prospective tenant. This retrofit shall be completed no later than forty-five (45) days after receiving the request. |

**APPENDIX C**

**NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS
OF 2 GOLD STREET**

To Our Tenants and Prospective Tenants:

      Federal law requires that the public and common use areas at 2 Gold Street contain accessibility features for persons with disabilities. Within the next six months, we will be undertaking a program of retrofits to the public and common use areas to make them more accessible to persons with disabilities. A list of retrofits we will be undertaking is available at the leasing office. We do not anticipate that current residents will have to be relocated during the term of their tenancy or that prospective residents will have their move-in dates delayed because of the retrofits we will be undertaking.

      Should you have questions regarding this letter, please contact the leasing office at 2 Gold Street or the United States Attorney's Office, Southern District of New York, at (212) 637-0840.

Sincerely,
2 Gold L.L.C.
By: TF Cornerstone Inc., its managing agent

## APPENDIX D-1

## NOTICE TO TENANTS OR PROSPECTIVE TENANTS
## OF RETROFITS TO 2 GOLD STREET

2 Gold L.L.C. and its managing agent, TF Cornerstone Inc., are dedicated to the principle of equal housing opportunity.  The federal Fair Housing Act requires that apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

This is to advise you that, as a result of a settlement in a case brought by the United States against the developers and designers of this apartment complex, we have agreed to modify, by varying degrees, the apartments at 2 Gold Street to provide greater accessibility for people with disabilities.  Your unit or prospective unit is one of those that will be modified. **These modifications will be made at no cost to the resident.**

Any scheduling of the modifications will take into account your preferences and convenience.  The actual work will take no more than five days and, should you have to move out temporarily, we will pay reasonable relocation and housing expenses at the applicable federal government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) while the modifications are being made.

Depending on the particular features in your unit, the modifications may include:

- Modification of door entries and thresholds to ensure accessibility to persons in wheelchairs;

- Modification of bathrooms and kitchens to ensure accessibility to persons in wheelchairs;

- Modification of kitchen appliances to ensure usability by persons with disabilities; or

- Modification of electrical outlets.

While you do not have to request the modifications now, you should be aware that some of this work must be completed **within the next six months**, regardless of your intention to stay in the apartment for a longer time.  A representative will be contacting you soon to review these modifications and to discuss a time frame within which these modifications may be made.

If you have any questions, please contact us at the management office.

## APPENDIX D-2

## NOTICE TO TENANTS OR PROSPECTIVE TENANTS
## OF AVAILABLE RETROFITS TO 2 GOLD STREET

2 Gold L.L.C. and its managing agent, TF Cornerstone Inc., are dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

This is to advise you that, as a result of a settlement in a case brought by the United States against the developers and designers of this apartment complex, we have agreed to offer certain modifications to apartment units at 2 Gold Street to provide greater accessibility for people with disabilities upon request of tenants or prospective tenants. We want you to know that you may request to have your apartment, or prospective apartment, modified. **These modifications will be made at no cost to the resident.**

Any scheduling of the modifications will take into account your preferences and convenience. The actual work will take no more than five days and, should you have to move out temporarily, we will pay reasonable relocation and housing expenses at the applicable federal government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) while the modifications are being made.

Depending on the particular features in your unit, the modifications may include:

- Modification of thresholds to ensure access to terraces;

- Modification of kitchens and bathrooms to ensure accessibility to persons in wheelchairs;

- Modification of kitchen appliances to ensure usability by persons with disabilities; or

- Modification of electrical outlets.

In addition to these modifications, upon the request of tenants or prospective tenants with disabilities, we will assign mailboxes that are a maximum of 48" above the finished floor or, if reassignment is not possible, will arrange for daily mail delivery to the tenant's apartment at a time between 8:30 am and 6:30 pm.

If you have any questions, please contact us at the management office.

## APPENDIX E

## NOTICE TO PERSONS WHO MAY HAVE SUFFERED FROM INADEQUATE ACCESSIBILITY AT 2 GOLD STREET

On _____, the United States District Court for the Southern District of New York entered a consent order resolving a lawsuit brought by the United States Department of Justice against certain owners, builders, and/or developers alleging that they failed to include certain accessible features for persons with disabilities required by the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(c), in the design and construction of 2 Gold Street (the "Property"). 2 Gold Street denied the allegations and agreed to the consent order to settle the matter without litigation.

Under this consent order, a person may be entitled to receive monetary relief if he or she:

- WAS DISCOURAGED FROM LIVING AT THIS PROPERTY BECAUSE OF THE LACK OF ACCESSIBLE FEATURES;

- HAS BEEN HURT IN ANY WAY BY THE LACK OF ACCESSIBLE FEATURES AT THIS PROPERTY;

- PAID TO HAVE AN APARTMENT AT THIS PROPERTY MADE MORE ACCESSIBLE TO PERSONS WITH DISABILITIES; OR

- WAS OTHERWISE DISCRIMINATED AGAINST ON THE BASIS OF DISABILITY AS A RESULT OF THE DESIGN AND CONSTRUCTION OF THIS PROPERTY.

If you wish to make a claim for discrimination on the basis of disability, or if you have any information about persons who may have such a claim, please contact the United States Attorney's Office, Southern District of New York at 212-637-2800. You may also fax us at 212-637-2702 or write to:

United States Attorney's Office, Southern District of New York
Attn: Civil Rights Unit
86 Chambers Street
New York, New York 10007

NOTE: You must call or write no later than _____, 20__.

## APPENDIX F

## RELEASE FORM

In consideration of the payment of the sum of _____ dollars ($_____), pursuant to the Consent Decree entered in *United States of America v. 2 Gold L.L.C., et al.*, 13 Civ. _____ (__) (S.D.N.Y.), I hereby release the defendants named in this action from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in the above-styled action.

I fully acknowledge and agree that this release of the defendants shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.

I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____ _____
(Signature)


_____ _____
(Print name)


_____
(Date)


STATE OF NEW YORK    )
                                          s.s.:
COUNTY OF NEW YORK  )

On _____, 201__, before me personally came _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed above, and acknowledged to me he/she executed the same in his/her capacity, and that by his/her signature, he/she executed the foregoing release.


_____ _____
Notary Public

## APPENDIX G

### ACKNOWLEDGMENT OF RECEIPT OF CONSENT DECREE

I _____ _____, am an employee/agent of _____ _____ and my duties include _____ _____. I have received a copy or approved summary of the Consent Decree in *United States of America v. 2 Gold L.L.C., et al.*, 13 Civ. _____ (__) (S.D.N.Y.) and have had an opportunity to read it and to have all questions concerning the Consent Decree answered to my satisfaction.


_____, 20___


_____
Employee/Agent Signature

**APPENDIX H**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for persons with disabilities.

If my duties involve or will involve supervision over the development, design and/or construction of an apartment building, I was also instructed as to the design and construction requirements of the Fair Housing Act.

If my duties involve or will involve supervisory authority over the rental of apartments and/or the provision of services to residents, I was also instructed as to rental policies and procedures, including the nondiscrimination, complaint, and reasonable accommodation policies of the Fair Housing Act.

I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.

_____

Employee Signature


_____

Print Name


_____

Date